# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| SONYA HUERTA, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE CITY OF SANTA BARBARA, *et al.*,<br><br>    Defendants. | CV 17-06225 TJH (JEMx)<br><br>Order<br>and<br>Judgment<br>JS-6 |

The Court has considered Defendants' motion for summary judgment, together with the moving and opposing papers.

During the evening of August 3, 2016, Decedent Joel Huerta ["Decedent"] went to a neighbor's house and asked her to call the police because he was not feeling well. Defendants Officers Sonja Crawford, James Lombardo, Gareth Newmann, Tyler Thompson, John Barriga, and Nathan Beltran, all police officers with the Santa Barbara Police Department [collectively, "Defendant Officers"], responded to the call.

When the Defendant Officers arrived, they divided their duties – some attempted to tend to Decedent while others went to Decedent's home to ask his family members questions regarding his behavior and potential drug use. Decedent asked for an

ambulance, despite the fact that an ambulance was already on the scene, but he denied having any medical issues or having taken any drugs. The Defendant Officers encouraged Decedent to leave his neighbor's house and go home. Some of the Defendant Officers tried to help Decedent walk down the stairs of his neighbor's porch and to walk back home, but Decedent threw punches. The parties dispute whether the punches were aimed at a Defendant Officer.

When the paramedics approached Decedent and asked, at least, twice if he wanted medical assistance and if they could check his vital signs, Decedent declined both. The paramedics, also, offered to take Decedent to the hospital but he, again, declined.

After the paramedics left, Defendant Officers, again, attempted to help Decedent get back home. Over the span of a few minutes, Decedent repeatedly stated, in no particular order, that he wanted to go home; did not want to go home; wanted to go to the hospital; and felt fine and did not need, or want, to go to the hospital. Defendant Officers, again, tried to help Decedent walk down the porch stairs but he refused. Decedent, then, pushed Defendant Officers away, and refused to leave his neighbor's property. Defendant Sergeant Andre Feller, of the Santa Barbara Police Department, arrived at the scene because Defendant Officers had been on the scene for at least twenty minutes.

Based on Decedent's erratic behavior, Decedent's neighbor wanted him to leave her property. Because Decedent would not voluntarily leave the property, despite numerous requests, Defendant Officers decided to arrest Decedent. Defendant Officers grabbed Decedent's arms and struggled to place him under arrest. Eventually, Decedent was handcuffed and carried down one flight of stairs. The parties dispute whether Decedent's resistance or lack of cooperation was because he was resisting arrest or because he was in distress caused by a serious medical need.

Based on the struggle, Defendant Sergeant Feller ordered the Defendant Officers to place Decedent in the WRAP, a constraint device that binds an individual's legs and

upper body.  Defendant Sergeant Joshua Morton arrived at the scene and had the WRAP with him.  Decedent was placed in the WRAP and a spit mask, and, then, the Defendant Officers carried him to the back of a police car.  While Decedent was getting placed in the WRAP and carried to the police car, he yelled for the police and asked for an ambulance or to go to a hospital.

Defendant Officers Crawford and Lombaro drove Decedent to the Santa Barbara County Jail ["the Jail"].  During the drive, Decedent was acting erratically, struggling in the WRAP, and yelling.  Decedent, eventually, became less erratic but the parties dispute whether he became placated because he was calming down or because he was in the midst of a medical emergency.  After arriving at the Jail, Decedent was carried to a holding cell where he stopped breathing and died.  Despite the attempt by law enforcement officers at the Jail, including a nurse, Decedent passed away.  It is undisputed that Decedent was under the influence of methamphetamine.  Plaintiffs argue that the cause of Decedent's death was a preexisting heart condition that was exacerbated by the methamphetamine and prolonged struggle within the WRAP.

On August 22, 2017, Plaintiffs Sonya Huerta and Yvonne Huerta, Decedent's wife and daughter, respectively, filed this action against the Defendants, alleging: (1) Excessive force, in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; (2) Deliberate indifference to a serious medical need, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; 3) Interference with a familial relationship, in violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; and 4) Various state law claims.

Defendants, now, move for summary judgment or, in the alternative, partial summary judgment on Plaintiffs' claims.

When considering a motion for summary judgment, where the nonmoving party has the burden of proof at trial on a claim or issue, as Plaintiffs have here, summary judgment should be granted when the nonmoving party fails to produce evidence to establish a *prima facie* case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986).

Defendants, as the moving party, however, have the initial burden to show that Plaintiffs do not have enough evidence to establish a *prima facie* case for their claims. *See Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938 (9th Cir. 2008). Defendants have met this initial burden. *See Williams*, 552 F.3d at 938. Thus, the burden shifts to Plaintiffs to establish, with admissible evidence, a *prima facie* case for their claims. *See Celotex*, 477 U.S. at 322. At this juncture, the Court cannot weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Further, the Court must accept Plaintiffs facts as true and draw all reasonable inferences in their favor. *See Liberty Lobby*, 477 U.S. at 255.

Plaintiffs' excessive force claim is predicated on Defendants' use of the WRAP on Decedent. In their motion for summary judgment, Defendants argue that there was either: (1) No constitutional violation; or (2) Qualified immunity that bars this claim. Because qualified immunity acts as a bar to litigation and should be addressed at the earliest opportunity, the Court will address it first. *See Pearson v. Callahan*, 555 U.S. 223, 231-232 (2009).

Qualified immunity attaches when an official's conduct does not violate a clearly established constitutional right. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Although Defendants have the ultimate burden of proof as to this affirmative defense, Plaintiffs have the initial burden to show that there was a clearly established constitutional right at the time the alleged violation occurred. *See Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1388 (9th Cir. 1997).

Existing precedent must be specific enough to place the contours of the constitutional right beyond debate. *Kisela*, 138 S. Ct. at 1152. Specificity is especially important where the constitutional right at issue is the Fourth Amendment. *Kisela*, 138 S. Ct. at 1152. Law enforcement officers are entitled to qualified immunity for an alleged use of excessive force unless "existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S.Ct. at 1152.

Here, Plaintiffs argue that a reasonable officer would have had fair notice that

the conduct in this case was unlawful given the Santa Barbara Police Department's policies and the WRAP's training manual. However, Plaintiffs acknowledge that there is an "absence of a Ninth Circuit case presenting the same set of facts" that establishes a constitutional violation, which acts as a tacit admission that they cannot satisfy their initial burden. *See Kisela*, 138 S. Ct. at 1152.

In *Tatum v. City and Cty. of S.F.*, 441 F.3d 1090 (9th Cir. 2006), the Ninth Circuit held that an officer's use of a restrictive hold was objectively reasonable because, although the defendant was being arrested for non-severe conduct, the defendant was resisting arrest. *Tatum*, 441 F.3d at 1096-1097. The record before the Court is clear that Decedent struggled against the Defendant Officers during his arrest. Plaintiffs rely on the declaration of Barry Gustin to characterize Decedent's actions during his arrest as manifestations of medical distress rather than active resistance. However, Gustin's declaration is replete with mentions that Decedent "resisted" arrest. Moreover, Plaintiffs' characterization of distress as opposed to resistance is a distinction without a difference. *See Tatum*, 441 F.3d at 1097. Like in *Tatum*, the fact that Decedent resisted arrest, regardless of the reason, justified the use of further force, here. *See Tatum*, 441 F.3d at 1096-1097.

Because Plaintiffs have not established that Defendants violated a clearly established right at the time of the alleged violation, Defendants are entitled to qualified immunity for Plaintiffs' excessive force claim. *See Kisela*, 138 S. Ct. at 1152.

Plaintiffs' deliberate indifference to a serious medical need claim alleged that the Defendants violated the Fourth, Fifth, Eighth, and Fourteenth Amendments because Defendants failed to summon medical assistance for Decedent after his arrest.

As an initial matter, Plaintiffs reliance on the Fourth, Fifth, and Eighth Amendments is misplaced. A pretrial detainee has a right to care for serious medical needs under only the substantive due process clause of the Fourteenth Amendment. *See Lolli v. Cty. of Orange*, 351 F.3d 410, 418-419 (9th Cir. 2003). To establish a deliberate indifference claim, Plaintiffs must show that: (1) Decedent was at serious

risk of medical harm; and (2) Defendants knew of and disregarded an "excessive risk" to Decedent's health and safety. *See Long v. City of La Habra*, 2005 WL 2219442, *1 (9th Cir. 2005).

Here, Plaintiffs failed to show that Defendant Officers knew of, and disregarded, an excessive risk to Decedent's health and safety. Plaintiffs' theory as to the cause of Decedent's serious medical need was a preexisting heart condition exacerbated by methamphetamine intoxication and his prolonged struggle in the WRAP. However, when asked, Decedent did not tell Defendants that he had a preexisting medical condition. Moreover, because Plaintiffs' theory is that Decedent's serious medical need developed over time, Plaintiffs' failed to pinpoint when Decedent's needs became a serious medical need, and when Defendant Officers became aware of it and then disregarded Decedent's needs. *See Long*, 2005 WL 2219442, at *1-2.

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' deliberate indifference claim.

Because Plaintiffs failed to establish an underlying constitutional violation, their interference with a familial relationship claim, also, fails. *See Gausvik v. Perez*, 392 F.3d 1006, 1008 (9th Cir. 2004).

Accordingly,

It is Ordered that the motion for summary judgment be, and hereby is, Granted as to Plaintiffs' Fourth and Fourteenth Amendment claims.

It is further Ordered, *sua sponte*, that the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

It is further Ordered, Adjudged, and Decreed, that judgment be, and hereby is, Entered in favor of Defendants City of Santa Barbara, John Barriga,

Nathan Beltran, Sonja Crawford, Andre Feller, James Lombardo, Joshua Morton, Gareth Newmann, and Tyler Thompson and against Plaintiffs Sonya Huerta and Yvonne Huerta as to the federal claims.

It is further Ordered that Plaintiffs Sonya Huerta and Yvonne Huerta shall take nothing as to the federal claims.

Date: October 1, 2019

_____
Terry J. Hatter, Jr.
Senior United States District Judge